**MORGAN, LEWIS & BOCKIUS LLP**
Robert Jon Hendricks
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:   +1.415.442.1000
Facsimile:   +1.415.442.1001
rj.hendricks@morganlewis.com

Clayton M. Davis
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: +1.214.466.4000
Fax: +1.214.466.4001
clayton.davis@morganlewis.com

**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona  85004
Telephone:  (602) 381-5477

Kent Brockelman (009627)
  Email: kbrockelman@cblawyers.com
Jill J. Chasson (019424)
  Email: jchasson@cblawyers.com

*Attorneys for Defendant CBRE, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Alexis Scott-Ortiz,<br><br>   Plaintiff,<br><br>v.<br><br>CBRE, Inc., a Delaware corporation; XYZ Corporations I-V; and John and Jane Does I-X,<br><br>   Defendants. | No. CV-20-00238-MHB<br><br>**DEFENDANT CBRE, INC.'s 12(b)(1) MOTION TO DISMISS AND COMPEL ARBITRATION** |

{00495178.1 }

**INTRODUCTION**

Plaintiff Alexis Scott-Ortiz ("Plaintiff") worked for Defendant CBRE, Inc. ("CBRE") from September 2013 to January 2016 as a Maintenance Technician and again beginning in September 2016 as a Building Engineer. In each instance, CBRE provided Plaintiff an Offer Letter that provided the "full and complete terms" of its employment offer to Plaintiff. Both Offer Letters contain an arbitration clause in which the parties jointly agreed to submit all claims and disputes to binding arbitration. Plaintiff accepted both of CBRE's offers and worked for the company in each instance thereafter.

Despite (twice) agreeing to submit disputes with CBRE to arbitration, Plaintiff filed this lawsuit on January 31, 2020, asserting claims under 42 U.S.C. § 1981 based on alleged racial discrimination and retaliation relating to his employment with the company. CBRE requested Plaintiff voluntarily dismiss this action and proceed with arbitration, but he has declined, necessitating this 12(b)(1) Motion to Dismiss and Compel Arbitration.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA") and the binding arbitration agreements between the parties, CBRE requests this Court grant its Motion to Dismiss, enforce the parties' agreements, and direct Plaintiff to pursue his claims against CBRE in arbitration on an individual basis.

**FACTUAL BACKGROUND**

**A. Plaintiff Accepts Two Employment Offers from CBRE**

On August 8, 2013, CBRE offered Plaintiff a Maintenance Technician position in Phoenix, Arizona. *See* Declaration of Emily Smith ("Smith Decl."), attached as Exhibit 1, at ¶ 4, Offer Letter at Ex. A. Plaintiff ceased working for the company in January 2016. (Smith Decl. ¶ 4) On August 30, 2016, CBRE offered Plaintiff a new position as a Building Engineer in Phoenix, Arizona. (Smith Decl. ¶ 6, Offer Letter at Ex. D). The Offer Letters provide the "full and complete terms" of CBRE's employment offer to Plaintiff. (Smith Decl. Ex. A at p. 1, 3; Ex. D at p. 1)

Plaintiff accepted both of CBRE's employment offers. In the case of the August 8, 2013 offer, a CBRE Recruiting Coordinator sent Plaintiff an email containing his Offer Letter with instructions for Plaintiff to respond with either his acceptance or rejection of the letter. (Smith Decl. ¶¶ 3-4) Plaintiff responded to the email indicating his acceptance. (*Id*.) A CBRE Recruiting Coordinator inputted Plaintiff's acceptance of the letter into CBRE's online database. (*Id*.) Indeed, Plaintiff's Applicant Activity in 2013 within CBRE's online database reflects that Plaintiff accepted his offer. (Smith Decl. ¶ 4, Ex. B) Following his offer acceptance, Plaintiff began working for CBRE on September 16, 2013 and ceased working for the company in January 2016. (Smith Decl. ¶ 4)

In the case of the August 30, 2016 offer, Plaintiff received his offer through CBRE's online database. (Smith Decl. ¶¶ 5-6, Ex. B) Plaintiff was required to create a unique username and password to create and access his profile on CBRE's online career site. (Smith Decl. ¶¶ 5-6)  CBRE generated Plaintiff's Offer Letter within his online profile. (*Id.*) Upon entering his unique username and password at CBRE's online career site, Plaintiff had the opportunity to access the Offer Letter. (*Id.*) At the bottom of the last page of the Offer Letter, Plaintiff could select from a drop down menu with the response "Accept the offer" or "Refuse the offer". (*Id.*) Plaintiff was then required to enter his email address to "sign" the form. (*Id.*) Once this information was inputted, Plaintiff had the ability to finalize acceptance or rejection of the offer by clicking "Submit". (Smith Decl. ¶¶ 5-6, Ex. C)

Plaintiff accepted the August 30, 2016 Offer Letter. (Smith Decl. ¶ 6, Ex. D) Specifically, when an applicant accepts an offer, CBRE's online system automatically generates and stores a copy of the Offer Letter with an electronically embedded stamp at the bottom of the document indicating an applicant's response, including the date and time of the response. (Smith Decl. ¶ 5) As reflected in the electronically embedded stamp on Plaintiff's Offer Letter, Plaintiff accepted the offer electronically on August 30, 2016 at 9:31 AM. (Smith Decl. ¶ 6, Ex. D at p. 4) Following his acceptance, Plaintiff began working for CBRE on September 14, 2016. (Smith Decl. ¶ 7)

### B. The Offer Letter Arbitration Agreements

Each Offer Letter includes a substantially similar arbitration clause. (Smith Decl. Ex. A at p. 2; Ex. D at pp. 3-4) The arbitration clause provides that the parties agreed to submit any dispute or claim between the parties to confidential binding arbitration, and waives any right to a jury trial. (*Id.*) "[C]laims and disputes subject to arbitration include ***all claims arising from or related to [Plaintiff's] employment or the termination of [his] employment*** including, but not limited to*, **claims for … discrimination*** (including, but not limited to, ***race***, sex, religion, national origin, age, marital status, or medical condition or disability) … and ***claims for violation of any federal,*** state, or governmental ***law***, ***statute,*** regulation, or ordinance." (*Id.*) (emphasis added). The agreement to arbitrate is mutual—both parties "jointly" agreed to submit all claims and disputes to arbitration. (*Id.*) Claims must be brought in a party's "individual capacity", "not as a plaintiff or class member in any class, collective, or representative action." (*Id.*)

The 2013 Offer Letter provides any arbitration will be conducted pursuant to the provisions of the arbitration rules in Arizona, or in absence of state law the Federal Arbitration Act ("FAA"), and the 2016 Offer Letter provides any arbitration will be conducted pursuant to the provisions of the FAA. (*Id.*) Both agreements provide that arbitration will be heard by a State or Federal judge in the county in which the employee was last employed. (*Id.*) The Company must pay all fees and costs of the Arbitration, with each party bearing their own attorneys' fees, except as otherwise required by law. (*Id.*)

# LEGAL ARGUMENT

## I. Legal Standard

A 12(b)(1) motion challenges the plaintiff's contention that the court has subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'" *ROI Properties Inc. v. Burford Capital Ltd.,* CV-18-03300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019) (quoting *Cancer Center Assocs. for Research and Excellence, Inc. v. Philadelphia Ins. Cos.*, 2015 WL 1766938, at *3 (E.D. Cal. April 17, 2015)).

Accordingly, CBRE has properly invoked Rule 12(b)(1) for dismissal of Plaintiff's Complaint pursuant to the parties binding arbitration agreements.

## II. Plaintiff's Claims are Subject to the Parties' Binding Arbitration Agreements.

Under the FAA and the parties' arbitration agreements, Plaintiff must arbitrate his claims against CBRE. The FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The FAA reflects a "liberal federal policy favoring arbitration" and requires courts to compel arbitration of any claim covered by a valid written arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (recognizing a "liberal federal policy favoring arbitration agreements"); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration"). Moreover,

the FAA applies broadly to employment contracts, with the exception of transportation workers. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 113–19 (2001).

In this case, the 2016 arbitration agreement between Plaintiff and CBRE provides that arbitration "shall be conducted pursuant to the provisions of the arbitration rules of the Federal Arbitration Act." (Smith Decl. Ex. D at pp. 3-4).[1] Plaintiff also alleges that he is a resident of Arizona, while CBRE is a Delaware corporation. (Dkt. 1. ¶¶ 4-5). This is sufficient to invoke the provisions of the FAA. *See* 9 U.S.C. § 2; *Thoma v. CBRE Group, Inc.,* CV 16-6040-CBM-AJWX, 2017 WL 10699611, at *1 n.2 (C.D. Cal. Mar. 9, 2017).

The court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *ROI Properties Inc.,* 2019 WL 1359254, at *3 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000)). Any doubt concerning the scope of arbitrable issues must be resolved in favor of arbitration, regardless of whether the issue raised is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *Id.*

### A. Plaintiff and CBRE Have a Valid Agreement to Arbitrate.

While the FAA requires an agreement to arbitrate be in writing, it does not require that the writing be signed by the parties. *Batiste v. U.S. Veterans Initiative*, CV 11-01495-PHX-NVW, 2012 WL 300729, at *1 (D. Ariz. Feb. 1, 2012) (citing *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437, 1439 (9th Cir. 1994)). Instead, if it can be "fairly inferred" that that an employee understood that by accepting employment with an employer, the document containing an arbitration clause governed the terms of his employment, a valid

---

[1] While the 2013 agreement provides for Arizona's arbitration rules, or in the alternative, the FAA's rules, this provision is of no consequence as the FAA preempts state law. *See Hamblen v. Hatch,* 242 Ariz. 483, 488 ¶ 20 (2017) (quoting *S. Cal. Edison Co. v. Peabody W. Coal Co.,* 194 Ariz. 47, 51 ¶ 13 (1999) ("[T]he FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts.")

arbitration agreement exists. *Id.* "When determining whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.,* 755 F.3d 1089, 1093 (9th Cir. 2014).

Under Arizona law, a contract is "'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006) (quoting Restatement (Second) of Contracts § 17(1) (1981)). The manifestation of mutual asset is determined based on objective evidence, including words or acts. *Id*. "'The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.'" *Id*. (quoting Restatement (Second) of Contracts § 19(1)).

Here, Plaintiff's Offer Letters contain a valid agreement to arbitrate. In fact, federal district courts have held that arbitration clauses contained in CBRE offer letters **virtually identical** to the one at issue here are valid, and have compelled arbitration pursuant to its terms. *See e.g. Romo v. CBRE Group, Inc.,* 8:18-cv-00237, 2018 WL 4802152, at *1, *10 (C.D. Cal. Oct. 3, 2018); *Bohart v. CBRE, Inc.,* 17-CV-00355-RM-KMT, 2018 WL 1135535, at *3-*4 (D. Colo. Feb. 28, 2018); *Owen v. CBRE, Inc.,* PWG-16-773, 2016 WL 7033973, at *3, *9 (D. Md. Dec. 2, 2016).

Specifically, the parties "jointly" agreed to submit all claims and disputes to confidential binding arbitration. (Smith Decl. Ex. A at p. 2; Ex. D at p. 3). This mutual promise to arbitrate constitutes sufficient consideration. *Collins v. Macy's Inc.,* CV-19-02572-PHX-GMS, 2019 WL 5188749, at *3 (D. Ariz. Oct. 15, 2019) (quoting *Circuit City,* 294 F.3d at 1108) ("An employer's promise to 'submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration.'"). CBRE offered Plaintiff employment pursuant to each Offer Letter and Plaintiff accepted both of CBRE's offers and worked for the company. (Smith Decl. ¶¶ 3-7)

Clearly, the parties entered into valid agreements to arbitrate.

### B. The Arbitration Clause Encompasses Plaintiff's Claims.

While state contract law governs the validity of the arbitration agreement, "the scope of the arbitration clause is governed by federal law." *Tracer Research Corp. v. Nat'l Envtl. Servs.* Co., 42 F.3d 1292, 1294 (9th Cir. 1994). The Ninth Circuit, addressing an arbitration clause requiring arbitration of any claim "arising in connection with" an agreement, has held that the arbitration clause "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999). Under an arbitration clause which utilizes highly similar broad language, the Ninth Circuit's conclusion holds, and the moving party "need only allege facts that 'touch matters' covered by the agreements containing the arbitration clauses, and 'all doubts are to be resolved in favor of arbitrability.'" *Gravestone Entm't LLC v. Maxim Media Mktg. Inc.,* CV-19-03385-PHX-GMS, 2019 WL 3578471, at *2 (D. Ariz. Aug. 6, 2019) (quoting *Mitsubishi Motors,* 473 U.S. at 624 n.13).

In this case, Plaintiff's Section 1981 race claims[2] fall within the parties' arbitration agreements. In the agreements, the parties agreed to submit "any dispute or claim" between the parties to confidential binding arbitration, and waive any right to a jury trial. (Smith Decl. Ex. A at p. 2; Ex. D at p. 3) The arbitration clause also provides that "all claims arising from or related to [Plaintiff's] employment or the termination of [his] employment" are subject to mandatory arbitration. (*Id.*) Moreover, the clause provides that these claims include, but are not limited to, "claims for … **discrimination** (including, but not limited to, **race**, sex, religion, national origin, age, marital status, or medical condition or disability) … and **claims for violation of any federal**, state, or governmental **law**, **statute**, regulation, or ordinance." (*Id.*) (emphasis added).

---

[2] The Ninth Circuit recently concluded that, like other discrimination claims, Section 1981 claims are subject to compulsory arbitration. *See Lambert v. Tesla, Inc.,* 923 F.3d 1246, 1252 (9th Cir. 2019). Accordingly, there is no issue as to the arbitrability of Plaintiff's legal claims.

Accordingly, Plaintiff's Section 1981 race claims fall squarely within the parties' arbitration agreements.

### III. Plaintiff Must Proceed to Arbitration in an Individual Capacity.

While Plaintiff has not styled his Complaint as a class or collective action, he must proceed to arbitration in his individual capacity, in any event. "No party can be compelled under the FAA to arbitrate on a class-wide or collective basis unless it agrees to do so by contract." *Dorman v. Charles Schwab Corp.,* 780 Fed. Appx. 510, 514 (9th Cir. 2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010). An arbitration agreement's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis. *Dorman* 780 Fed. Appx. At 514; *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1418, (2019); *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1623 (2018).

In this case, the parties agreed that arbitration claims or disputes must be brought in a party's "individual capacity", "not as a plaintiff or class member in any class, collective, or representative action." (Smith Decl. Ex. A at p. 2; Ex. D at 3) Therefore, Plaintiff must proceed to arbitration individually.

### CONCLUSION

Plaintiff and CBRE entered into valid and enforceable arbitration agreements. Plaintiff's claims in this lawsuit plainly fall within the scope of the parties' agreements, and the agreements provide that the parties must arbitrate individually. Therefore, CBRE respectfully requests that the Court dismiss this action, enforce the parties' agreements, and direct Plaintiff to proceed to arbitration on an individual basis.

Respectfully submitted this 27th day of April, 2020.

**MORGAN, LEWIS & BOCKIUS LLP**

By s/ Clayton M. Davis
   Robert Jon Hendricks
   Clayton M. Davis

**COPPERSMITH BROCKELMAN PLC**

By s/ Kent Brockelman
    Kent Brockelman
    Jill J. Chasson

*Attorneys for Defendant CBRE, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                                s/ Kent Brockelman