Daniel Bonnett (AZ#014127)
Michael Licata (AZ#033941)
Jennifer Murphey (AZ#034166)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
mlicata@martinbonnett.com
jmurphey@martinbonnett.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Alexis Scott-Ortiz, | Case No.: CV20-00238-DWL |
| Plaintiff, | PLAINTIFF'S COMBINED MOTION TO STAY PROCEEDINGS AND OPPOSITION TO DEFENDANT CBRE'S 12(b)(1) MOTION TO DISMISS AND COMPEL ARBITRATION |
| v. | |
| CBRE, Inc., a Delaware corporation; XYZ Corporations I-V; and John and Jane Does I-X, | |
| Defendants. | (Oral Argument Requested) |

Plaintiff commenced this action on January 1, 2020 alleging violations of 42 U.S.C. § 1981 in order to toll the statute of limitations on portions of his claims. At that time, Plaintiff had a charge alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act, as amended ("Title VII") and failure to grant reasonable workplace accommodations in violation of the Americans with Disabilities Act, as amended ("ADA") pending with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC Charge also alleged violations of Title VII and the ADA on behalf of similarly situated current or former employees of Defendant. The EEOC Charge is pending and currently being investigated by the EEOC's Los Angeles District Office after it was transferred from the Phoenix District Office.

For the reasons that follow, Plaintiff requests that the Court deny Defendant's Motion to Dismiss and Compel Arbitration ("Defendant's Motion") (Doc. 18) and stay further proceedings in this matter in order to allow the EEOC to complete its investigation and the related administrative process. Plaintiff further requests that Defendant's Motion be denied on grounds that the alleged arbitration agreement is procedurally and substantively unconscionable, and contains a material term that cannot be performed.

This combined motion and opposition is supported by the following facts and legal authorities, the Declaration of Alexis Scott-Ortiz ("Ortiz Decl.") with accompanying exhibit, the Declaration of Daniel Bonnett ("Bonnett Decl.") with accompanying exhibits, and the record before the Court.

## **MEMORANDUM OF POINTS AND AUTHORITIES**
## **STATEMENT OF FACTS**

Defendant, CBRE, is a world-wide commercial building management company that contracts with different entities, referred to as "accounts." (Ortiz. Decl. ¶ 2); *see also* https://ir.cbre.com/investor-relations-home/default.aspx (last visited May 29, 2020). When Plaintiff, Alexis Scott-Ortiz, ("Scott-Ortiz") was first hired by CBRE in 2013, he was offered and accepted a position as a Maintenance Technician in Phoenix, Arizona for CBRE's JCPenney account. (Ortiz Decl. ¶ 3). He received an offer letter from CBRE for this position (the "2013 Offer Letter"). (*Id.* at ¶ 4). Mr. Scott-Ortiz does not recall seeing any provision in the 2013 Offer Letter relating to arbitration and had no understanding of arbitration or what it meant to arbitrate employment claims. (*Id.* at ¶¶ 4 & 10). Due to health reasons, Plaintiff took a leave of absence in 2015. After exhausting all his available leave, Scott-Ortiz was still unable to return to work. (*Id.* at ¶ 5). As a result, his employment with CBRE terminated effective January 22, 2016, and his employment relationship with CBRE ended. (*Id.* at ¶¶ 5 & 6 and Exhibit "6" attached thereto). In August 2016, when his health allowed him to work, Plaintiff sought employment including applying for and interviewing with various managers handling different CBRE accounts. (*Id.* at ¶ 8).

Plaintiff interviewed with Jeffery Hawks ("Hawks"), who was the hiring manager for CBRE's American Express account. (*Id.*). During that interview, Hawks verbally offered Plaintiff a position as a Building Engineer for the American Express account, described the rate of pay Plaintiff would receive, the general job duties associated with that account, and told Scott-Ortiz that he needed him to start immediately. (*Id.*). Having been unemployed for months and in a poor financial position as a result, Plaintiff told Hawks that he accepted the position and could start work immediately. (*Id.*). Hawks explained that he first needed to order uniforms for Plaintiff, but in order to do so, he would send Scott-Ortiz an offer letter via the CBRE employee online portal. (*Id.*). Hawks told Plaintiff he could access the offer letter via the online portal and once located, he was to click "accept" on the attachment that contained the offer letter as soon as possible. (*Id.*). Hawks then told Plaintiff to call him just as soon as he had clicked "accept" so that Hawks could order Scott-Ortiz work uniforms right away. (*Id.*).

On that same or following day, Plaintiff received an email stating that the offer letter (the "2016 Offer Letter") was available to access through the CBRE online portal and that he could either "accept" or "reject" the offer. (*Id.* at ¶ 9). Given only these two options, it was Plaintiff's understanding that the terms in the 2016 Offer Letter were non-negotiable. (*Id.*). As stated previously, given the fact that he had been unemployed for eight months and was suffering financially, Scott-Ortiz logged into the online portal, located a drop-down menu with the two options he had been told he would find (i.e. either "accept" or "reject" the offer), and clicked "accept" as he had been directed by Hawks. (*Id.*). Plaintiff then called Hawks to inform him that he had clicked "accept" and that his uniforms could now be ordered. (*Id.*). Scott-Ortiz has no recollection of seeing anything about arbitration in the offer letter, nor was arbitration mentioned or explained by anyone at CBRE, including Hawks, when Plaintiff interviewed for and was offered employment, or any time thereafter. (*Id.* at ¶ 10). In fact, Scott-Ortiz had never heard the term "arbitration" or knew what that term meant until it came up in conjunction with this present litigation. (*Id.*). Furthermore, having never heard of arbitration, Scott-Ortiz had no understanding of its meaning during

3

his tenure of employment with CBRE or how it might impact him in the future. (*Id.*).

Plaintiff has alleged in his Complaint that during his employment with CBRE assigned to the American Express account, he was the victim of racial discrimination and was subjected to a racially hostile work environment. (Doc. 1). As a result, he was later diagnosed with post-traumatic stress disorder ("PTSD") and other related mental and physical ailments that qualified him as an individual with a disability within the meaning of the ADA. (*Id.*; Ortiz Decl. ¶ 11). Plaintiff alleges that as a result, CBRE was required to engage in the interactive process to identify and provide him reasonable workplace accommodations. (Ortiz Decl. ¶ 11; Exhibit "1" thereto). As further alleged in the Complaint and alleged in the EEOC Charge, CBRE failed to address the racially hostile work environment, engage in the interactive process or provide Plaintiff reasonable workplace accommodations ultimately resulting in Scott-Ortiz's constructive discharge and once again becoming unemployed. (Ortiz Decl. ¶ 11; Exhibit "1" thereto; Doc. 1). As a result, Plaintiff filed a charge of discrimination with the with the EEOC dated September 14, 2018, and later amended the charge on January 25, 2019 (collectively, the "EEOC Charge") alleging violations of Title VII and the ADA on behalf of the himself and similarly situated individuals. (Bonnett Decl. ¶ 3; Ortiz Decl. ¶ 12; Exhibit "1" thereto).

After the EEOC Charge was filed and later amended, both the Plaintiff and his attorney have regularly communicated with the EEOC Investigator, Michelle Silver, and been advised that the EEOC was and still is currently in the process of investigating class-wide allegations of Title VII and ADA violations in addition to Plaintiff's individual claims. (Bonnett Decl. ¶ 5 & 6 and Exhibits "2" & "3" attached thereto; Ortiz Decl. ¶ 12). On May 26, 2020, Plaintiff's counsel received a letter from a newly assigned EEOC Investigator advising that the EEOC is still investigating Plaintiff's individual charges but also continues to investigate claims under both Title VII and ADA on behalf of similarly situated individuals. (Bonnett Decl. ¶ 7 and Exhibit "4" attached thereto). That investigation and EEOC's administrative process regarding the EEOC Charge is still ongoing, the outcome of which has direct impact on this litigation.

## **PLAINTIFF'S MOTION TO STAY PROCEEDINGS**

Plaintiff respectfully requests that the Court deny Defendant's Motion and stay further proceedings in this matter pending completion of the EEOC administrative process and its final determination and of the disposition of Plaintiff's EEOC Charge. Good cause exists to grant this request.

Courts recognize that where charges are pending with the EEOC, a complainant should *either* request a stay of the proceedings *or* request a Notice of Right to Sue from the EEOC, but is not required to choose one option over the other. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 715 (9th Cir. 2001); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 40 (2d Cir. 1992); *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 465, 95 S. Ct. 1716, 1723, 44 L. Ed. 2d 295 (1975). While not all courts have outwardly expressed a preference for a stay of proceedings over requesting a Notice of Right to Sue, many courts have implied as much by recognizing the importance of the EEOC administrative process and that electing to request a Notice of Right to Sue should be made only "*if* a complainant is dissatisfied with the progress the EEOC is making on his or her charge." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361 (1977) (emphasis added); *see also Woods*, 972 F.2d at 39 (finding that, although a complainant has the ability to request a Notice of Right to Sue, "[t]his does not diminish the fact that Congress viewed the prospect of full administrative review as an integral part of Title VII") (citing 118 Cong. Rec. 7168 (1972) ("It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC.")). Neither Plaintiff nor his attorneys are dissatisfied with the pace or scope of the EEOC's investigation. (Ortiz Decl. ¶ 12; Bonnett Decl. ¶ 7).

Based on Plaintiff's counsel's understanding of the facts and applicable law as well as the scope of the EEOC investigation, it is reasonably believed that the EEOC Los Angeles District Office may issue a favorable Letter of Determination finding probable cause to believe that the Defendant has violated either Title VII, the ADA, or both, not only as to Plaintiff, but also to a class of similarly situated individuals. (Bonnett Decl. ¶

9). At a minimum, Plaintiff should be given the benefit of any doubt by allowing the EEOC to complete the investigatory and deliberative processes. As this Court is undoubtedly aware, the Ninth Circuit has ruled that a probable cause finding in a Letter of Determination from the EEOC is admissible evidence and that it is reversible error to exclude such evidence from the trier or fact. *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (citing *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 504 (9th Cir. 1981)). Accordingly, it is not in Plaintiff's interest to request a Notice of Right to Sue while the EEOC is still actively investigating the Charge and expanding the investigation that may result in a probable cause finding or the EEOC possibly bringing an enforcement action on behalf of Plaintiff (and potentially a class of similarly situated individuals). Forcing Scott-Ortiz to proceed with litigating his claims (whether in this Court or an arbitral forum) potentially deprives Plaintiff of relevant, admissible evidence. Accordingly, good cause exists to stay this proceeding pending the outcome of the EEOC administrative process.

Should this Court deny a stay, thus resulting in Scott-Ortiz having to move forward with either litigation or arbitration, the outcome of either with regard to Plaintiff's alleged Sec. 1981 claim will likely have preclusive effect on the Title VII claims for which he is awaiting final disposition by the EEOC. *See Owens* 244 F.3d at 714–15 ("Title VII claims are not exempt from the doctrine of res judicata where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims."). Plaintiff cannot amend to add Title VII claims prior to exhausting the administrative process at the EEOC and obtaining a Notice of Right to Sue. *See B.K.B. v. Maui Police Dept.,* 276 F.3d 1091, 1099 (9th Cir. 2002); 42 U.S.C. § 2000e–5(e)(1).

The Supreme Court has also recognized Congress' intent that the Sec. 1981 and Title VII procedures complement each other, and a plaintiff should not be pressed to choose one claim over the other. *See Johnson*, 421 U.S. at 459 ("Congress noted 'that the remedies available to the individual under Title VII are co-extensive with the

individual's right to sue under the provisions of [Sec. 1981], and that the two procedures augment each other and are not mutually exclusive.'") (internal quotations omitted). Here, both causes of action (Scott-Ortiz's Sec. 1981 claim and Title VII charge) are predicated on racial discrimination, racially hostile work environment and retaliation arising from a common nucleus of facts, many of which are still under investigation by the EEOC.

Furthermore, Plaintiff has first-hand information that makes him a likely witness in any enforcement action the EEOC may elect to pursue against Defendant. If the EEOC elects to bring such an action against the Defendant on behalf of similarly situated individuals, Plaintiff, as will several percipient witnesses who will testify in Plaintiff's individual action in this Court or an arbitral forum, would also be likely witnesses in any EEOC enforcement action. The language in the 2016 Offer Letter relating to arbitration (the "Arbitration Language") requires that any arbitration proceeding be "confidential." Confidentiality relating to witness testimony and evidence presented in a compelled arbitration proceeding may limit otherwise admissible evidence in a separate EEOC enforcement action (e.g. sworn testimony that is either an admission or a prior inconsistent statement that may be offered for impeachment purposes).

A district court has discretionary power to stay proceedings and should do so where a hardship or inequity will exist absent a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Dependable Highway Express v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("[I]f there is even a fair possibility that the stay . . . will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity.") (internal quotations omitted). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). As explained, good cause and equity exist to stay further proceedings in this action pending completion of the EEOC administrative process.

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**

### I. The 2013 Offer Letter Has No Bearing on the Issue at Hand

Any agreement to arbitrate that may be deemed to exist as a result of the 2013 Offer Letter can only relate to claims that arose during Plaintiff's tenure of employment covered by that letter. That tenure ended on January 22, 2016 commensurate with Plaintiff's termination of employment. Since none of his claims at issue in this litigation are alleged to be based on acts or omission that occurred during that period of his employment, the 2013 Offer Letter does not compel Scott-Ortiz to arbitrate claims alleged in the present lawsuit. An individual cannot be compelled to arbitrate issues that go beyond the scope of any arbitration language or clause because "parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate." *Clarke v. ASARCO Inc.*, 601 P.2d 587, 589 (1979); *Allstate Ins. Co. v. Cook*, 519 P.2d 66, 68 (Ariz. App. 1974) (Finding that "arbitration agreements will not be extended by construction or implication."). *See also Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 772–74 (Ariz. App. 2014) (finding that where a resident of a care home signed an arbitration agreement at the beginning of his first and second stays at the home, but not the third or fourth stay, disputes relating to the fourth stay were beyond the scope of the agreements from the prior stays and were not arbitrable).

### II. There is no Enforceable Agreement That Compels Plaintiff to Arbitrate His Claims

The FAA's general policy favoring arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead '[o]rdinary contract principles [apply].'" *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Daisy Mfg. Co., Inc., v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)). "A court may not, . . . in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Perry v. Thomas*, 482 U.S. 483, 492 n. (1987). In deciding whether an arbitration clause or agreement is enforceable,

8

courts apply the same standard for deciding summary judgment motions, making no credibility determinations and drawing all reasonable inferences in favor of the non-moving party. *Perry v. NorthCentral Univ., Inc.*, 2011 WL 4356499, at *3 (D. Ariz. Sept. 19, 2011).

Even were this Court to determine that the Arbitration Language in the 2016 Offer Letter encompasses the claims set forth in Plaintiff's Complaint, it cannot be enforced as it is unconscionable, and contains a material provision which cannot be performed.

### A. The Arbitration Language is Unenforceable on Grounds of Unconscionability

Unconscionability is a generally applicable contract defense that applies equally to purported arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996). Procedural unconscionability addresses the fairness (or lack thereof) of the bargaining process. *Gullett on behalf of Estate of Gullett v. Kindred Nursing Ctr. W., L.L.C.*, 241 Ariz. 532, 540 (App. 2017). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (1995). A contract may be procedurally or substantively unconscionable (or both), however, "unconscionability can be established with a showing of substantive unconscionability alone." *Id.* at 59. The Arbitration Language in the 2016 Offer Letter is both procedurally and substantively unconscionable and, therefore, unenforceable.

#### 1. The Totality of the Circumstances Render the Arbitration Provision of the 2016 Offer Letter Procedurally Unconscionable

Clicking "accept" within the CBRE employee online portal under the circumstances that existed and as Hawkes specifically directed Scott-Ortiz to do so that he (Hawks) could order Plaintiff's work uniforms, does not evidence a mutual agreement to arbitrate. Not only was there a lack of fairness in the bargaining process necessary for a valid arbitration agreement, there was no opportunity to even engage in one. "Procedural unconscionability addresses the fairness of the bargaining process," including such

concerns as "'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 135 (App. 2014) (*quoting Clark v. Renaissance West, L.L.C.*, 232 Ariz. 510, 512 (App.2013)).

In determining whether an agreement is procedurally unconscionable, courts look to the totality of the unique circumstances of each case, such as factors which bear on the real and voluntary meeting of the minds: "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [or] whether alterations in the printed terms were possible . . .." *Maxwell* 907 P.2d at 58 (*quoting Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D.Mich. 1976)). In a totality of the circumstances analysis, courts also consider the manner in which the arbitration provision was presented to the party with the weaker bargaining power, and whether the contract was provided on a take-it-or-leave-it basis. *See Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1279 (D. Ariz. 2007).

The District Court in *Cooper* addressed whether an arbitration agreement was procedurally unconscionable and considered multiple factors, including, the age of the plaintiff, who was twenty-one years old; her education level, which consisted of some community college credits; the fact that she was told she was required to sign the agreements to proceed; that she did not know what arbitration was and that it was not explained to her; and that the agreement was unilaterally drafted by the defendant and presented on a take-it-or-leave-it basis. *Id*. at 1278–79. The Court concluded that the "circumstances . . . surrounding the unilateral drafting and the manner of presentation of the agreement to someone of Plaintiff's age and educational background on a take-it-or-leave it basis, in light of Plaintiff's total lack of bargaining power, supports the conclusion that the arbitration provision is procedurally unconscionable." *Id*. at 1279. The district court made this finding despite the fact that the plaintiff signed, not one, but two arbitration agreements in one day, and despite the fact that the arbitration agreements listed in clear, bullet-pointed, bold font the rights the plaintiff would waive by entering

10

into the agreements. *Id*. at 1271–73.

Here, the circumstances surrounding the manner by which Plaintiff was required to "accept" the 2016 Offer Letter are substantially similar, if not essentially identical to those in *Cooper*. Although Scott-Ortiz was thirty-three years old at the time he "accepted" the 2016 Offer Letter, his education consisted of a high school diploma and some community college credits (Ortiz Decl. ¶ 1); his prior work history consists entirely of mechanical and manual labor (*Id.*); he did not know what arbitration was, nor was it explained to him; and the 2016 Offer Letter was unilaterally drafted by Defendant with only a take-it or leave-it option. Moreover, Scott-Ortiz had already been offered and had accepted the position and told prior to actually receiving the 2016 Offer Letter that he was expected to start as soon as his uniforms were provided. There was no bargaining process whatsoever. Defendant admits that the only two options available to Plaintiff through the online portal was to select to either "accept" or "reject" the 2016 Offer Letter as presented. (Def's Motion, Doc. 18 p. 3, ¶ 2; Def's Exhibit 1, Doc 18-1, ¶ 5).The totality of the unique circumstances that are present here demonstrates a complete lack of any bargaining process, let alone a fair one, that is required to form an enforceable contract.

In its Motion to Dismiss, Defendant argues that since other courts, outside of this District, applying substantive contract law from other states, have compelled arbitration based on language similar to that which is at issue here, that this Court should simply follow suit. (Doc. 18, p. 7, ¶ 2). To do so, however, would ignore the specific facts of this case and run afoul of Arizona contract law which requires that the unique factual circumstances be carefully considered when determining issues of procedural conscionability, even though courts in other jurisdictions applying other substantive law may have reached a different result. *See Duenas, Maxwell, Cooper, supra*. Here, the unique circumstances not only parallel those in *Cooper*, they compel a different result from the other CBRE cases cited by Defendant. Accordingly, the Court should find that the Arbitration Language in the 2016 Offer Letter is procedurally unconscionable on these facts.

### 2. The Arbitration Language is Substantively Unconscionable as it Impairs Plaintiff's Entitlement to an Award of Attorney Fees and Costs

The Arbitration Language is substantially one-sided and poses a cost-price disparity to such an extent that it is substantively unconscionable. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations or rights imposed by the bargain, and significant cost-price disparity." *Maxwell,* 907 P.2d at 58*.* The Arizona Supreme Court has held that "a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving . . . limitation of remedies." *Cooper*, 503 F. Supp. 2d at 1278 (quoting *Maxwell,* 907 P.2d at 59).

Here, the Arbitration Language impairs Plaintiff's entitlement to an award of attorney fees and costs, should he prevail. It is well known that in actions between an employee and an employer, the employee will undoubtedly incur the majority of the overall costs and fees associated with the action. Due to the very nature of what an employee must prove in civil rights litigation, and the fact the employer is generally in possession of and has access to the bulk of information and witnesses, it logically follows that an employee-plaintiff will incur greater costs associated with experts to prove damages, need to depose more witnesses, and will request and review larger amounts of information than the employer. This case is no different. In an effort to level the playing field, Congress provided fee shifting provisions, such as the one relevant to this matter found in 42 U.S.C. § 1988, which allows prevailing plaintiffs to recover reasonable attorneys' fees, costs, and even expert fees. Congress' purpose in authorizing fee awards was "to encourage compliance with and enforcement of the civil rights laws," including to alleviate the deterrent effect that fees and costs might have on plaintiffs seeking to vindicate their civil rights. *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (quoting *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980)).

Arizona courts have concluded that arbitration agreements which require parties to waive or which impair remedies provided by federal statute are unenforceable. *See*

*Wernett v. Serv. Phoenix, LLC*, No. CIV09-168-TUC-CKJ, 2009 WL 1955612, at *5 (D. Ariz. July 6, 2009) (citing *Batory v. Sears, Roebuck & Co.*, 456 F.Supp.2d 1137, 1141 (D. Ariz. 2006). In *Wernett,* the court specifically found that an arbitration agreement provision stating, "[e]ach party waives any claim for and the arbitrator has no authority to award costs, expenses, attorneys's [sic] fees . . .," effectively denies a potential litigant the opportunity to vindicate his rights, and is therefore substantively unconscionable. *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 (1985) ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.")

The Arbitration Language in the 2016 Offer Letter states "each party shall pay for its own costs and attorneys' fees, if any, except as otherwise *required by law*." (Doc. 18-1, Exhibit D) (emphasis added). Unlike fee shifting provisions in other federal employment statutes[1], 42 U.S.C. § 1988 uses the word "may" rather than "shall." Accordingly, while an award of attorneys' fees to a plaintiff who prevails on a Sec. 1981, Title VII or ADA claim is presumptive, it is not "required." Should Scott-Ortiz be compelled to arbitrate his Sec. 1981, Title VII and ADA claims, Defendant would be free to argue that, since an award of attorneys' fees and costs are not *required* but are only discretionary, the arbitrator is not "required" to award them. This is tantamount to a waiver with no avenue of appeal given that arbitration is purported to be final and binding. In such an event, the intended deterrent effect of the fee-shifting provisions of the statute would be abrogated. This provision renders the Arbitration Language in the 2016 Offer Letter substantively unconscionable and, therefore, unenforceable.

**B.    A Material Term of the Arbitration Language Cannot be Performed**

The Arbitration Language provides that any arbitration shall be heard by a ***retired***

---

[1] *See* FMLA, 29 U.S.C. § 2617(a)(3); FLSA and ADEA, 29 U.S.C. §216(b); *see also Sherry v. Prot., Inc*., 14 F. Supp. 2d 1055, 1057 (N.D. Ill. 1998) (citing *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984); *Farrar v. Hobby*, 506 U.S. 103 (1992)); *Orozco v. Borenstein*, 2013 WL 655119, at *2 (D. Ariz. Feb. 21, 2013) ("It is not only appropriate to award fees to a successful plaintiff, *it is mandatory*.") (emphasis added).

13

State or Federal judge in the county where Plaintiff was last employed, i.e. Maricopa County, and that the Rules of the Federal Arbitration Act ("FedArb Rules") apply. (Doc. 18-1 Exhibit D). Even if the Court were to find that Plaintiff agreed to arbitrate that claims at issue, it would necessarily follow that he did so with the understanding that his claims would be arbitrated before a retired Arizona state court or Federal court judge in Maricopa County. As stated, the Arbitration Language requires that the FedArb Rules apply.

FedArb Rule 7 provides the process for Selection of Arbitrators and states, in relevant part, that if the parties cannot agree on a single arbitrator, "the Arbitrator . . . shall be selected by FedArb . . . from among Participating Arbitrators eligible for appointment, taking into account the views of the parties with regard to particular qualifications or experience." FedArb Rule 7.02. (Bonnett Decl. ¶ 18 and Exhibit "5" attached). If Plaintiff is compelled to arbitrate, he is entitled to express his preference that a retired Federal judge serve as arbitrator and would do so given that his claims arise under federal law (42 U.S.C. § 1981). (*Id.*). A retired Federal judge would have far more experience than a retired Maricopa County, Arizona superior court judge in dealing with the federal statutes upon which Plaintiff basis his claims.

The FedArb website contains its approved Panel of retired Federal judges, none of whom are from the District of Arizona. See https://www.fedarb.com/federal-judges/ last visited May 27, 2020. Even if Plaintiff were inclined to agree to a State court judge to serve as an arbitrator, which he is not in agreement to do for the reasons stated, the FedArb website does not list any retired state court judges from Maricopa County or anywhere within the State of Arizona. *See also* https://www.fedarb.com/state-judges/ (last visited May 27, 2020). Accordingly, even if it is deemed that Plaintiff consented to the Arbitration Agreement by accepting Defendant's offer or employment in 2016, a point which Plaintiff does not concede, there are no arbitrators that meet the criteria of the Arbitration Section and FedArb Rule 7.02.

Where the performance contemplated in a contract is impossible, due to no fault

of the party seeking to void the contract, the duty to perform may be relieved. *See United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (noting that the defense of impossibility is traditionally unavailable where the barrier to performance arises from the act of the party seeking discharge); Restatement (Second) Contracts, §§ 1 ("A contract is a promise or a set of promises . . . the performance of which the law in some way recognizes as a duty.") & 227(3) ("the non-occurrence of the event is a ground for discharge of that duty after it has become a duty to perform."); *Minderman v. Perry*, 437 P.2d 407, 410 (Ariz. 1968) ("where the existence of a specific person is essential to the performance of a promise the duty to perform that promise is discharged if the person is not in existence at the time for seasonal performance").

Accordingly, arbitration cannot be performed according to the terms of the Arbitration Language in the 2016 Offer Letter.

### III. Plaintiff did not Waive His Right to Bring a Class Action

Although Defendant contends in its Motion (Doc. 18, p. 9) that Scott-Ortiz must proceed in his individual capacity, should this matter proceed to arbitration, Plaintiff disagrees with that contention. The Arbitration Language provides, "All claims or disputes subject to arbitration, *other than claims seeking to enforce rights under Section 7 of the National Labor Relations Act*, must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action." (Doc. 18-1, Exhibit D) (emphasis added). Section 7 protects the right "to engage in other concerted activities for the purpose . . . mutual aid or protection." Class actions brought by current or former employees involve Section 7 rights. *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 983 (9th Cir. 2016) (finding that the "mutual aid or protection clause" set forth in Sec. 7 of the NLRA "includes the substantive right to collectively 'seek to improve working conditions through resort to administrative and judicial forums.'") (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978)). *See also Thoma v. CBRE Grp., Inc.*, No. CV 16-6040-CBM-AJWX, 2017 WL 10573978, at *2 (C.D. Cal. Jan. 26, 2017)[2]

---

[2] It is well-established among the Arizona courts that "if Arizona law has not addressed an issue, we 'look approvingly to the laws of California,' especially when interpreting a

(noting that concerted activity, via collective actions, is a federal right protected by the NLRA). Although the Supreme Court's 2018 decision in *Epic Sys. Corp. v. Lewis*, overturned the holdings in *Morris*, *Eastex*, and *Thoma*, it did not declare that class and collective actions no longer involve Section 7 rights. *Epic*, 138 S. Ct. 1612, 1616 (2018).

Because the law in the Ninth Circuit at the time the 2016 Offer Letter was presented and "accepted" did not allow for mandatory class action waivers in arbitration agreements, the provision excluding claims seeking to enforce Section 7 rights should be enforced.  It is undisputed that Defendant drafted the 2016 Offer Letter and in doing so, obviously elected to include language that did not require an employee to waive his Section 7 right to bring or participate in a class or collective action that asserts "claims seeking to enforce rights under Section 7 . . .." Presumably, Defendants did so in order to comply with prevailing circuit law at the time because it was aware that an employer could not require an employee to waive this Section 7 rights as a condition of employment.  Scott-Ortiz could not have knowingly waived such a right during his employment which ended before *Epic Systems* was decided on May 21, 2018 – after Plaintiff no longer worked for Defendant. Accordingly, Plaintiff did not waive his right to bring claims on a class-wide basis even if required to arbitrate them

## **CONCLUSION**

For the reasons stated, Plaintiff respectfully requests that the Court enter an order granting a stay of further proceedings in this matter pending disposition of Plaintiff's pending EEOC Charge. Alternatively, should the Court deny a request to stay these proceedings, Plaintiff requests that the Court deny Defendant's Motion for the reasons stated, and grant such other relief as is proper and just.

///

///

///

---

similar or identical statute." *Moore v. Browning*, 203 Ariz. 102, 109 (2002) (quoting *State v. Vallejos*, 89 Ariz. 76, 82 (1960)).

Respectfully submitted this 29th day of May, 2020.

**MARTIN & BONNETT, P.L.L.C.**

By: s/ Daniel L. Bonnett
    Daniel L. Bonnett
    Michael Licata
    Jennifer N. Murphey
    4647 N. 32nd. Street, Suite 185
    Phoenix, AZ 85004
    (602) 240-6900

*Attorneys for Plaintiff*