**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexis Scott-Ortiz, | No. CV-20-00238-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| CBRE Incorporated, et al., | |
| Defendants. | |

In this action, Plaintiff Alexis Scott-Ortiz ("Scott-Ortiz") has asserted various claims under 42 U.S.C. § 1981 against his former employer, Defendant CBRE, Inc. ("CBRE"). CBRE now moves to dismiss those claims and to require Scott-Ortiz to arbitrate them. (Doc. 18.) Scott-Ortiz opposes CBRE's motion and argues, additionally or alternatively, that this action should be stayed until the Equal Employment Opportunity Commission ("EEOC") completes its investigation of a charge of discrimination he filed against CBRE. (Doc. 23.) For the following reasons, both motions will be granted in part and denied in part—Scott-Ortiz will be ordered to commence arbitration proceedings and this action will be stayed, rather than dismissed, during the pendency of those proceedings.

## BACKGROUND

I.  Factual Background

   A.  **Permissibility Of Extrinsic Evidence**

Both parties submitted evidence in support of their respective positions. (Doc. 18-1 [Smith declaration]; Doc. 23-1 [Bonnett declaration]; Doc. 23-2 [Scott-Ortiz

declaration]; Doc. 28 [second Bonnett declaration].)  Additionally, CBRE objects to some of Scott-Ortiz's evidence.  (Doc. 24 at 10-11.)  Thus, before summarizing the relevant facts, it is necessary to address the legal standards governing the parties' evidentiary submissions.

Although CBRE characterizes its motion as a Rule 12(b)(1) motion to dismiss, it also seeks an order compelling Scott-Ortiz to commence arbitration.  (Doc. 18 at 9 ["CBRE respectfully requests that the Court dismiss this action, enforce the parties' agreements, and direct Plaintiff to proceed to arbitration on an individual basis."].)  It is permissible to consider evidence outside the pleadings when resolving a motion to compel arbitration. *See generally Krasemann v. Scholastic Inc.*, 2019 WL 3220535, *2-3 (D. Ariz. 2019) (discussing this rule while noting that some courts preclude the submission of extrinsic evidence when the movant only seeks dismissal).  To the extent there are conflicts in the evidence submitted by the parties, "the court applies a standard similar to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Thus, in the summary below, the Court has resolved evidentiary conflicts in favor of Scott-Ortiz, the non-movant.

CBRE objects to one of Scott-Ortiz's submissions, the first Bonnett declaration, because Bonnett electronically signed it instead of affixing his actual signature.  (Doc. 24 at 10.)  This argument fails because, under Rule 5(d)(3)(C) of the Federal Rules of Civil Procedure, "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature."  Here, Bonnett is Scott-Ortiz's counsel of record, the challenged filing was made through Bonnett's CM/ECF account and was authorized by Bonnett, and Bonnett's name appears in the signature block of the filing.  *Cf.* LRCiv 5.5(g) ("The log-in and password required to submit documents to the ECF System constitute the Registered User's signature on all electronic documents filed with the Court for purposes of Rule 11 of the Federal Rules of Civil Procedure.").  Other courts have denied signature-related objections under analogous circumstances.  *Abreu v. Braga*, 2011 WL 121598, *1 (E.D. Cal. 2011) ("[P]laintiff objects to defense counsel's use of an electronic signature on her responses to

plaintiff's discovery requests. . . . The motion lacks merit and must be denied. Plaintiff presents no grounds for objecting to counsel's use of an electronic signature, which is authorized by the local rules of this court.").

CBRE also contends that some of Bonnett's assertions are not based on personal knowledge and/or constitute legal conclusions. (Doc. 24 at 10-11.) The Court agrees in part. For example, Bonnett's assertion that Scott-Ortiz's claims under 42 U.S.C. § 1981 have a "two-year statute of limitations" (Doc. 23-1 ¶ 4) is a legal conclusion. In lieu of conducting a line-by-line analysis Bonnett's first declaration, the Court has simply disregarded, in the summary below, any improper assertions.

B. **Summary Of Relevant Facts**

1. Scott-Ortiz's Background

Scott-Ortiz is approximately 37 years old, is a high school graduate, and attended some community college. (Doc. 23-2 ¶ 1.) His work history has involved "primarily . . . mechanical and manual labor." (*Id.*)

2. Scott-Ortiz's First Term Of Employment With CBRE

In or around August 2013, Scott-Ortiz applied for a position with CBRE as a maintenance technician. (*Id.* ¶ 3; Doc. 18-1 ¶ 4.) Scott-Ortiz acknowledges he "received an offer letter for this position." (Doc. 23-2 ¶ 4.) The offer letter itself, which CBRE has submitted (and whose authenticity Scott-Ortiz does not dispute), is dated August 8, 2013 and is two-and-a-half pages long. (Doc. 18-1 at 7-9.) Under the heading "Arbitration," the letter provides as follows:

> In the event of any dispute or claim between you and CBRE . . . , we jointly agree to submit all such disputes or claims to confidential binding arbitration and waive any right to a jury trial. The claims and disputes subject to arbitration include all claims arising from or related to your employment or the termination of your employment including, but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); and claims for

|     |     |
| --- | --- |
| 1   | violation of any federal, state, or governmental law, statute, regulation, or ordinance.  All claims or disputes subject to arbitration, other than claims seeking to enforce rights under Section 7 of the National Labor Relations Act, must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action. The arbitration (i) shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CBRE (e.g., in California, the California Arbitration Act) or in absence of state law the Federal Arbitration Act; and (ii) shall be heard before a retired State or Federal judge in the county containing the Company's office in which you were last employed.  The Company shall pay for all fees and costs of the Arbitrator; however, each party shall pay for its own costs and attorneys' fees, if any, except as otherwise required by law. |

(*Id.* at 8.)  Although Scott-Ortiz does not dispute that this arbitration clause appeared in his offer letter, he "do[es] not recall seeing" it.  (Doc. 23-2 ¶ 4.)

The last sentence of the offer letter, which is in bold font, states: "Your response is required by the expiration date noted on the Candidate Gateway.  Accepting the offer outlined above, you understand this letter represents the full and complete terms of your employment offer."  (Doc. 18-1 at 9.)  All parties agree that Scott-Ortiz sent an email to CBRE's recruiting coordinator confirming he was accepting the offer.  (Doc. 18-1 ¶ 4; Doc. 18-1 at 11.)

Scott-Ortiz began work for CBRE in mid-September 2013 and remained an employee until January 2016, when he was terminated due to health complications that prevented him from working.  (Doc. 18-1 ¶ 4; Doc. 23-2 ¶¶ 5, 7.)

        3.    <u>Scott-Ortiz's Second Term Of Employment With CBRE</u>

Between January 2016 and August 2016, Scott-Ortiz "experienced substantial financial hardship" due to his health-related inability to work.  (Doc. 23-2 ¶ 7.)

In August 2016, after his health improved, Scott-Ortiz began applying for jobs.  (*Id.* ¶ 8.)  Among other things, he applied again to CBRE.  (*Id.*)  During a resulting interview, a CBRE hiring manager "verbally offered [Scott-Ortiz] a position as a Building Engineer . . . , described the rate of pay and general job duties associated with that [position] and [stated] that he needed [Scott-Ortiz] to start work immediately."  (*Id.*)  The hiring manager

- 4 -

also told Scott-Ortiz that "he would first need to order uniforms, but in order to do so, he would send a letter to [Scott-Ortiz], via the CBRE employee portal, confirming the offer he had verbally made [to Scott-Ortiz]. He said that in order to get everything started and to get uniforms ordered he needed [Scott-Ortiz] to go into the portal and click 'accept' on the attachment with the offer letter as soon as possible." (*Id.*)

The next day, Scott-Ortiz received an email stating that the offer letter was available. (*Id.* ¶ 9.) The offer letter itself, which CBRE has submitted (and whose authenticity Scott-Ortiz does not dispute), is dated August 30, 2016 and is four pages long. (Doc. 18-1 at 15-18.) It includes a clause entitled "Arbitration." (*Id.* at 17-18.) The wording of this clause is identical to the arbitration clause in the August 2013 offer letter, except that the first clause of the penultimate sentence provides that the arbitration "shall be conducted pursuant to the arbitration rules of the the Federal Arbitration Act." (*Id.*)[1] As with the previous letter, Scott-Ortiz does not dispute that this letter contained an arbitration clause but contends he has "no recollection of seeing" it. (Doc. 23-2 ¶ 10.) The final sentence of the 2016 offer letter explained that Scott-Ortiz could contact his hiring manager if he had any questions: "If you have any questions, please do not hesitate to contact your Hiring Manager at [XXX-XXX-XXXX] or [XXXXX]@cbre.com." (Doc. 18-1 at 18.)

All parties agree that Scott-Ortiz accepted the August 2016 offer letter. (Doc. 23-2 ¶ 9; Doc. 18-1 ¶ 6.) CBRE has submitted undisputed evidence demonstrating that, to do so, Scott-Ortiz had to log onto CBRE's website with a unique username and password, at which point he had to "select from a drop down menu with the response 'Accept the offer' or 'Refuse the offer.' [He was] then required to enter his . . . email address to 'sign' the form. Once this information [was] inputted, [he had] the ability to finalize acceptance or rejection of the offer by clicking 'Submit.'" (Doc. 18-1 ¶ 5.)

Scott-Ortiz began his second term of employment with CBRE on September 14, 2016. (*Id.* ¶ 7.) This term of employment lasted until May 2018. (Doc. 23-1 at 9.)

---

[1] As noted, the August 2013 letter provided that the arbitration "shall be conducted pursuant to the provisions of the arbitration rules of the state in which you are or were last employed by CBRE (e.g., in California, the California Arbitration Act) or in absence of state law the Federal Arbitration Act." (Doc. 18-1 at 8.)

      4.  The EEOC Proceedings

In September 2018, Scott-Ortiz filed a charge of discrimination against CBRE with the EEOC. (Doc. 23-1 at 8-9.) The charge relates solely to Scott-Ortiz's second term of employment that began in 2016. (*Id.* at 8.) The charge alleges that Scott-Ortiz suffered discrimination based on four grounds: race, national origin, retaliation, and disability. (*Id.*)

In January 2019, Scott-Ortiz filed an amended charge of discrimination. (Doc. 23-1 at 10-11.) It adds an allegation that "similarly situated employees" have suffered discrimination. (*Id.* at 11.)

On April 16, 2020, the then-lead EEOC investigator sent an email to Scott-Ortiz's counsel that provided an update on the status of the EEOC's investigation. (Doc. 23-1 at 30.) This email reported that "we recently expanded the investigation to include a class allegation so that we can investigate the harassment issue based on race and national origin (the charge only had a class allegation for the ADA issue)." (*Id.*) This email also reported that "this case is being reassigned to another [EEOC] investigator as I am about to go out on maternity leave. Do not worry as the new investigator will have access to all information that has been provided thus far." (*Id.*)

On May 26, 2020, the new EEOC investigator sent a letter to Scott-Ortiz's counsel. (Doc. 23-1 at 33.) This letter reported that the EEOC's investigation remained ongoing. (*Id.*)

On September 28, 2020, Scott-Ortiz's counsel sent an email to the new EEOC investigator requesting a status update. (Doc. 28 ¶ 6.) That same day, the new EEOC investigator responded that the charge was still open and under investigation. (*Id.* ¶ 7.)

On November 3, 2020, Scott-Ortiz's counsel sent another email requesting a status update. (*Id.* ¶ 8.)

On November 9, 2020, Scott-Ortiz's counsel received a response letter stating that "the investigation is continuing." (Doc. 28-3 at 2.)

II. Procedural History

On January 31, 2020, Scott-Ortiz initiated this action by filing the complaint. (Doc.

1.) The complaint does not contain any Title VII or ADA claims because the EEOC has not yet issued a "right to sue" letter to Scott-Ortiz. (Doc. 23-1 ¶ 8.) Thus, the only claims asserted in the complaint are claims arising under 42 U.S.C. § 1981.

On April 27, 2020, CBRE filed a motion to dismiss and compel arbitration. (Doc. 18.)

On May 29, 2020, Scott-Ortiz filed a combined motion to stay and opposition to CBRE's motion. (Doc. 23.)

On June 12, 2020, CBRE filed a combined reply in support of its motion and opposition to Scott-Ortiz's stay request. (Doc. 24.)

On June 19, 2020, Scott-Ortiz filed a reply in support of his stay request. (Doc. 25.)

On November 3, 2020, the Court ordered Scott-Ortiz's counsel to submit updated information concerning the status of the EEOC investigation. (Doc. 26.)

On November 9, 2020, Scott-Ortiz's counsel provided the requested information. (Doc. 28.)

On November 10, 2020, the Court issued a tentative order. (Doc. 29.)

On November 17, 2020, the Court heard oral argument. (Doc. 30.)

**DISCUSSION**

I.  CBRE's Motion To Compel Arbitration

    A.  **Legal Standard**

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. This includes employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-15 (2001). The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court's role

under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

B.     **Discussion**

CBRE argues that it entered into two different arbitration agreements with Scott-Ortiz (the 2013 and 2016 offer letters), that each agreement is valid, that Scott-Ortiz's claims in this action fall within the scope of each agreement, and that each agreement therefore provides an independent basis for dismissing Scott-Ortiz's claims and requiring Scott-Ortiz to commence arbitration. (Doc. 18 at 5-9.) Additionally, CBRE asks the Court to clarify that Scott-Ortiz may only litigate in an individual capacity during the arbitration because the arbitration agreements preclude him from asserting class-wide claims. (*Id.* at 9.) In response, Scott-Ortiz argues that the 2013 offer letter "has no bearing on the issue at hand" because it could only encompass claims that arose during his first term of employment and all of his claims in this action arise from his second term of employment. (Doc. 23 at 8.) As for the arbitration clause in the 2016 offer letter, Scott-Ortiz argues it is unenforceable because (1) it is procedurally unconscionable, (2) it is substantively unconscionable, and (3) it contains a material term that cannot be performed. (*Id.* at 9-15.) Finally, Scott-Ortiz contends the class-action waiver language is either inapplicable or invalid. (*Id.* at 15-16.)

The Court concludes it is unnecessary to resolve the parties' dispute concerning the applicability of the arbitration clause in the 2013 offer letter. This is because the arbitration clause in the 2016 offer letter is valid and enforceable and encompasses Scott-Ortiz's claims in this action.[2]

As noted, Scott-Ortiz's primary objection is that the arbitration agreement in the 2016 offer letter it is procedurally and substantively unconscionable. "Unconscionability

---

[2] Scott-Ortiz doesn't seem to dispute CBRE's contention that the language of the arbitration agreement in the 2016 offer letter is broad enough to encompasses his claims in this action. (Doc. 23 at 9.) In any event, CBRE's position on this point is correct. The arbitration agreement specifically encompasses claims for discrimination and claims based on the alleged violation of federal statutes.

- 8 -

1 is a generally applicable contract defense that may render an arbitration agreement
2 unenforceable under the FAA and it is determined according to the laws of the state of
3 contract formation." *Edwards v. Vemma Nutrition*, 2018 WL 637382, *4 (D. Ariz. 2018)
4 (citations omitted).  Here, both sides agree that Arizona law governs.  (Doc. 18 at 7; Doc.
5 23 at 11; Doc. 24 at 5.)  "Under Arizona law, the plaintiff bears the burden of proving the
6 unenforceability of an arbitration provision, and the determination is made by the Court as
7 a matter of law." *Edwards*, 2018 WL 637382 at *4.

Procedural unconscionability "arises from unfairness in the bargaining process" and "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Id*.  Thus, "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement. Moreover, an agreement may be enforceable even if the terms offered are not negotiable. Even if the weaker party does not understand all of the terms included in an agreement, the agreement may be enforceable if it is consistent with reasonable expectations and not unduly oppressive." *EEOC v. Cheesecake Factory, Inc.*, 2009 WL 1259359, *3 (D. Ariz. 2009) (citations omitted).  "[T]he fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts." *Duenas v. Life Care Centers of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014).

These principles foreclose Scott-Ortiz's claim of procedural unconscionability.  The 2016 offer letter was only four pages long, the arbitration clause was clearly marked, and Scott-Ortiz had to log onto the CBRE website and affirmatively verify that he was accepting the offer letter's terms.  The offer letter also invited Scott-Ortiz to contact his hiring manager if he had any questions.  There was no unfair surprise or fine print.  *Cf. Duenas*, 336 F.3d at 768-69 (rejecting procedural unconscionability challenge in part because the plaintiff "had an opportunity to review each agreement and exercise independent judgment when deciding whether to sign it" and "[t]here is no indication that the arbitration agreements were inconspicuously bundled with other contractual terms"). Nor was this the first time Scott-Ortiz received, and accepted, an employment offer from

CBRE that contained an arbitration provision. *Cf. Underwood v. Chapman Bell Road Imports, LLC*, 2013 WL 1289528, *1 (D. Ariz. 2013) ("Strongly militating against Plaintiff's [procedural unconscionability] arguments is the fact that she signed similar agreements with Defendant on two previous occasions.").

Notwithstanding all of this, Scott-Ortiz emphasizes that his conversation with his hiring manager caused him to view the offer letter as being presented on a take-it-or-leave-it basis. Scott-Ortiz does not allege, however, that the hiring manager somehow misled him concerning the presence or absence of an arbitration clause within the offer letter. Thus, even accepting Scott-Ortiz's arguments concerning the negotiation process, he has at most shown that he lacked an opportunity to negotiate. But courts applying Arizona law have repeatedly upheld the enforceability of arbitration clauses within employment contracts, even if the employee was relatively unsophisticated and was unable to negotiate the contractual terms. *See, e.g., Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1108 (D. Ariz. 2014) (rejecting procedural unconscionability challenge, where employees argued "they were required to agree to the Arbitration Policy as a condition of employment and . . . had no ability to negotiate the terms of the agreements," because "even if the arbitration agreements were contracts of adhesion that would not mean that they are procedurally unconscionable"); *Underwood,* 2013 WL 1289528 at *1 (rejecting procedural unconscionability challenge, where employee argued that "she has a limited education and lacks business experience," the defendant "gave her the Agreement to sign in the middle of a busy work day," and she "did not understand the concept of arbitration at the time," where "the terms of the Agreement are not unusual for employment contracts, and this Court has not found procedural unconscionability in similar situations"); *Monstanto v. DWW Partners, LLLP*, 2010 WL 234952, *3 (D. Ariz. 2010) ("There is no evidence of procedural unconscionability. Plaintiff maintains that he was required to enter the agreements to gain employment and he lacked an ability to negotiate their terms. However, these factors merely point to the agreements being contracts of adhesion, which are fully enforceable unless contrary to reasonable expectations or otherwise unconscionable.");

*Cheesecake Factory*, 2009 WL 1259359 at *3 (rejecting procedural unconscionability challenge, where employees argued they were "presented [with] a standardized 'take it or leave it' unilaterally drafted form" and "did not know or understand what 'arbitration proceedings' meant," because "[t]hey offer no evidence that [the employer] attempted to deceive them" and "an agreement may be enforceable even if the terms offered are not negotiable"). *See generally Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206 (Ariz. Ct. App. 2020) ("The superior court's factual findings here do not establish procedural unconscionability. Instead, at most they demonstrate that the Agreement was akin to a standardized adhesion contract. . . . Such contracts are not *per se* unconscionable and, instead, are typically enforceable.").

Scott-Ortiz also contends that his personal characteristics, coupled with the financial pressure he was experiencing at the time he received the 2016 job offer, support a finding of procedural unconscionability. This argument is unavailing. Scott-Ortiz is a high school graduate who has taken some college courses and who was in his mid-30s at the time he signed the agreement in question. Additionally, as discussed above, Scott-Ortiz was able to log onto the CBRE website from home to review the offer letter, was invited to call or email his hiring manager if he had any questions about the letter, and had signed a nearly identical agreement three years earlier. These circumstances are easily distinguishable from *Cooper v. QC Financial Services, Inc.*, 503 F. Supp. 2d 1266 (D. Ariz. 2007), which is the primary case on which Scott-Ortiz relies. There, the disputed contract was "unilaterally drafted by Defendant and presented to the then 21-year-old Plaintiff on a take-it-or-leave-it basis" and was not an employment contract—instead, it involved the extension of an arguably usurious loan by a "payday" lender. *Id.* at 1269-70, 1278. For similar reasons, this case is distinguishable from *Broemmer v. Abortion Services of Phoenix, Ltd.*, 840 P.2d 1013 (Ariz. 1992), which involved a plaintiff who "was 21 years old, unmarried, and 16 or 17 weeks pregnant" and undergoing "considerable confusion and emotional and physical turmoil" at the time she signed an adhesion contract with an arbitration agreement. *Id.* at 1014-15. Although a finding of procedural unconscionability

might be appropriate if "the contract was signed hurriedly and without explanation in emergency circumstances," *Duenas*, 336 P.3d at 769, no such circumstances were present here.

As for substantive unconscionability, this doctrine "is concerned with the relative fairness of the actual contract terms." *Edwards*, 2018 WL 637382 at *4. The only portion of the 2016 agreement that Scott-Ortiz challenges on substantive-unconscionability grounds is the clause dealing with attorneys' fees and costs, which provides as follows: "The Company shall pay for all fees and costs of the Arbitrator; however, each party shall pay for its own costs and attorneys' fees, if any, except as otherwise required by law." (Doc. 18-1 at 18.) According to Scott-Ortiz, this clause is improper because it is inconsistent with the federal civil rights statute, 42 U.S.C. § 1988(b), which provides that prevailing parties "may" recover their fees and costs. (Doc. 23 at 12-13.)

The Court disagrees. As an initial matter, it's not clear that the challenged clause would have any impact on Scott-Ortiz's ability, should he prevail during the arbitration proceeding, to seek recovery of his fees and costs. Although the clause creates a default rule that "each party shall pay for its own costs and attorneys' fees," it also clarifies that this default rule is subject to an exception: "[E]xcept as otherwise required by law." In its reply, CBRE makes a strong textual argument that this qualifying language incorporates the availability of fee shifting in an arbitration involving a federal statutory claim. (Doc. 24 at 7-8.)

Moreover, even if Scott-Ortiz's interpretation of the clause is correct, it doesn't follow that the remedy would be to deny CBRE's request to compel arbitration. Instead, the offending clause can simply be disregarded. *Edwards*, 2018 WL 637382 at *5 ("To remedy a contract with a substantively unconscionable provision, a court under Arizona law may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.") (internal quotation marks omitted). In fact, this was the outcome in *Wernett v. Service Phoenix, LLC*, 2009 WL 1955612 (D. Ariz.

2009), which is the case on which Scott-Ortiz relies. There, the arbitration agreement stated, without exception, that "the arbitrator has no authority to award costs, expenses, attorneys's fees, punitive damages or tort damages." *Id.* at *5. Although the district court concluded that this clause "unlawfully limits the remedies available to [the plaintiff] under Title VII and ACRA," the court also concluded that the clause could be severed because the arbitration agreement as a whole "does not contain an insidious pattern that provides [the employer] with undue advantages in employment related disputes." *Id.* at *9. Here, similarly, Scott-Ortiz has voiced substantive objections to only one clause within the agreement. Accordingly, the Court will simply clarify that, should Scott-Ortiz prevail in arbitration, he may seek attorneys' fees and costs to the extent permitted by 42 U.S.C. § 1988.

Scott-Ortiz's next argument concerns the impossibility of performance. He contends that the 2016 agreement requires that the arbitrator be a retired state or federal judge "from Maricopa County" yet the list of arbitrators identified on the FAA's website doesn't include any former Arizona judges. (Doc. 23 at 13-17.)

This argument is easily rejected. The arbitration provision in the 2016 offer letter provides that "[t]he arbitration . . . shall be heard before a retired State or Federal judge in the county containing the Company's office in which you were last employed." (Doc. 18-1 at 17-18.) This language doesn't require the retired judge to hail "from" Maricopa County. It simply requires the retired judge serving as the arbitrator, wherever he or she may be coming from, to hold the arbitration "in" Maricopa County.

Finally, as for Scott-Ortiz's ability to assert class-wide claims during the arbitration, the relevant clause of the parties' agreement provides: "All claims or disputes subject to arbitration, other than claims seeking to enforce rights under Section 7 of the National Labor Relations Act, must be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective, or representative action." (Doc. 18-1 at 17.) Scott-Ortiz argues that the class-wide claims he hopes to advance at the conclusion of the EEOC's investigation, which will be premised on violations of the ADA and/or Title

VII, aren't barred by this provision because they fall within the exception for "claims seeking to enforce rights under Section 7 of the National Labor Relations Act." (Doc. 23 at 15-16.) This argument lacks merit. As the Supreme Court has explained, "Section 7 focuses on the right to organize unions and bargain collectively. It may permit unions to bargain to prohibit arbitration. But it does not express approval or disapproval of arbitration. It does not mention class or collective action procedures. . . . The notion that Section 7 confers a right to class or collective actions seems pretty unlikely when you recall that procedures like that were hardly known when the NLRA was adopted in 1935." *Epic Sys. Corp. v. Lewis,* 138 S.Ct. 1612, 1624 (2018). It is therefore difficult to see how the class-based ADA and Title VII claims that Scott-Ortiz hopes to assert could be viewed as claims "seeking to enforce rights under" Section 7 of the NLRA.

Alternatively, Scott-Ortiz argues that because *Epic Systems* wasn't decided until 2018, his decision to enter into a class-action waiver in August 2016 can't be considered "knowing." (Doc. 23 at 16.) This argument fails. Putting aside the fact that Scott-Ortiz contends he didn't even read the arbitration clause in the 2016 agreement, Scott-Ortiz hasn't established that class-based claims under Title VII and the ADA were considered "claims seeking to enforce rights under Section 7 of the National Labor Relations Act" in the Ninth Circuit until 2018. The case that Scott-Ortiz cites for this proposition, *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), involved an employee asserting a very different type of class-based claim—a collective action under the Fair Labor Standards Act ("FLSA") for misclassification and unpaid overtime wages. *Id.* at 979. Although the Ninth Circuit concluded that the arbitration agreement barring this claim was invalid under Section 7 of the NLRA, because it impermissibly precluded the employee from asserting a "concerted legal claim regarding wages, hours, and terms and conditions of employment" (*id.* at 979), the court had no reason to consider whether anti-discrimination claims under Title VII or the ADA (which don't involve "wages" or "hours" and only address the "terms and conditions of employment" in a loose sense) would be subject to same analysis. Moreover, by August 2016, many other courts had held (or suggested) that claims under

Title VII and ADA are *not* claims to enforce rights under the NLRA. *See, e.g., Alexander v. Gardner-Denver*, 415 U.S. 36, 51 (1974) (holding that Title VII "stands on plainly different ground" from the rights "conferred on employees collectively to foster the processes of bargaining" because Title VII "concerns not majoritarian processes, but an individual's right to equal employment opportunities" and that "[o]f necessity, the rights conferred [by Title VII] can form no part of the collective-bargaining process"); *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971) ("Racial discrimination in employment is an unfair labor practice that violates [the NLRA] if the discrimination is unjustified and interferes with the affected employees' right to ac[t] concertedly for their own aid or protection. In contrast, racial discrimination in employment is prohibit[ed] by Title VII without reference to the effect on the employees' right to unite. Hence, certain discriminatory practices that are valid under the National Labor Relations Act may be invalid under Title VII.").

Accordingly, because "a valid agreement to arbitrate exists" and that agreement "encompasses the dispute at issue," *Chiron,* 207 F.3d at 1130, CBRE's motion to compel Scott-Ortiz to proceed to arbitration will be granted. Scott-Ortiz must proceed in an individual capacity.

II.     CBRE's Motion To Dismiss

In addition to seeking an order compelling Scott-Ortiz to commence arbitration, CBRE seeks an order dismissing this action. (Doc. 18 at 2.) CBRE relies on Rule 12(b)(1) when seeking this form of relief, arguing (or at least implying) that the Court lacks subject-matter jurisdiction in light of the parties' arbitration agreement. (*Id.* at 5.)

The Court is not persuaded that the presence of a valid arbitration agreement interferes with its subject-matter jurisdiction. Although the Ninth Circuit does not appear to have weighed in on this issue, other Circuits have reasoned that "[a]n arbitration agreement alone, without other statutory or binding jurisdictional limitations, does not divest the federal courts of subject matter jurisdiction." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). *See also Alvarez-Mauras v. Banco Popular of Puerto Rico*, 919 F.3d 617,

623 n.8 (1st Cir. 2019) ("[T]his circuit has consistently held that the existence of a valid arbitration agreement does not strip the court of jurisdiction."). *But see Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration.").

This approach makes sense. Scott-Ortiz has sued CBRE for violating a federal statute, 42 U.S.C. § 1981. This Court has subject-matter jurisdiction over that claim under 28 U.S.C. § 1331. CBRE has, in turn, invoked a different federal statute, 9 U.S.C. § 3, in an effort to compel Scott-Ortiz to comply with the parties' arbitration agreement. (Doc. 18 at 2 ["Pursuant to the [FAA], 9 U.S.C. § 3 . . . and the binding arbitration agreements between the parties, CBRE requests . . . ."].) Section 3 of the FAA doesn't purport to strip courts of subject-matter jurisdiction over actions that are subject to arbitration—to the contrary, it commands courts to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See also Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (characterizing § 3 of the FAA as a mandate "that district courts must stay pending proceedings on issues subject to arbitration until such arbitration has been had"). Thus, the Court declines to dismiss this action due to the absence of subject-matter jurisdiction. And because CBRE only invoked Rule 12(b)(1) as the basis for its dismissal request, it is unnecessary to resolve whether dismissal might be warranted on other bases.[3]

III. Scott-Ortiz's Motion To Stay

The analysis in the preceding section, which holds that this action will be stayed (rather than dismissed) in light of the order compelling arbitration, does not fully resolve

---

[3] The Court notes that some pre-*Tillman* Ninth Circuit decisions suggest that district courts have discretion to "stay or dismiss" an action in which the parties have been ordered to arbitrate. *See, e.g., Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed."); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (rejecting argument that "the provision for stay in 9 U.S.C. section 3 is the defendant's only remedy where there is an arbitration clause"). Nevertheless, those cases don't mandate dismissal and the Court concludes, to the extent it retains discretion to choose between remedies in this scenario, that a stay rather than dismissal is appropriate.

- 16 -

Scott-Ortiz's stay request. Scott-Ortiz also asks the Court to stay the issuance of the order compelling arbitration until the EEOC investigation is complete. (Doc. 23 at 6 ["Should this Court deny a stay, thus resulting in Scott-Ortiz having to move forward with either litigation or arbitration, the outcome of either with regard to Plaintiff's [§ 1981] claim will likely have preclusive effect on the Title VII claims for which he is awaiting final disposition by the EEOC."].)

This portion of Scott-Ortiz's stay request will be denied. Although Scott-Ortiz has identified several reasons why the *resolution* of the arbitration should be delayed until the EEOC investigation is complete, he has not explained why the *initiation* of the arbitration must be delayed, too. The arbitrator will be in the best position to formulate a schedule that takes those considerations into account and to otherwise safeguard Scott-Ortiz's ability to expand his theories of recovery should the EEOC issue a right to sue letter or favorable determination. This Court's role under the FAA, in contrast, is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron,* 207 F.3d at 1130 (citations omitted). Put another way, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter,* 470 U.S. at 218.[4]

Accordingly, **IT IS ORDERED** that:

(1) CBRE's motion to dismiss and to compel arbitration (Doc. 18) is **granted in part and denied in part**. Scott-Ortiz must pursue his claims against CBRE in arbitration in Arizona. When doing so, Scott-Ortiz must proceed in an individual capacity.

(2) Scott-Ortiz's motion to stay (Doc. 23) is **granted in part and denied in part**.

---

[4] To the extent Scott-Ortiz's request can be construed as a request to enjoin the *arbitrator* from going forward until the EEOC's investigation is complete (Doc. 25 at 2-3), as opposed to a request to stay the issuance of this Court's order compelling arbitration, that request will be denied. Again, the arbitrator will be in the best position to formulate a fair schedule that takes the parties' interests into account, and this Court should not be in the business of overseeing or micromanaging arbitration proceedings.

1 | This action is **stayed** pending resolution of the arbitration proceeding.

2 |    (3) The parties are ordered to file a joint notice every six months concerning the
3 | status of the arbitration proceeding (with the first report due six months from the issuance
4 | of this order) and to file a joint notice within 10 days of when the arbitration proceeding
5 | concludes.

6 |    Dated this 18th day of November, 2020.

_____
Dominic W. Lanza
United States District Judge